# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JERMAU GASS,<br>　　　　　Plaintiff, | CIVIL ACTION |
| v. | |
| ALVIN MATTHEWS, et al;<br>　　　　　Defendants. | NO. 18-2360 |

## MEMORANDUM OPINION

Plaintiff Jermau Gass alleges that while he was held as a pre-trial detainee in the Philadelphia Corrections System, a group of "Defendant Corrections Officers"[1] beat him, breaking multiple bones in his face and causing him permanent injuries. He also claims that various Corrections Officers falsified a report relating to the incident and otherwise covered up their alleged misconduct. In light of these allegations, Plaintiff asserts six Counts in his Amended Complaint: unreasonable use of force under 42 U.S.C. § 1983 against Defendant Corrections Officers (Count I); failure to intervene under 42 U.S.C. § 1983 against Defendant Corrections Officers (Count II); assault and battery under state law against Defendant Corrections Officers (Count III); custom or policy of failing to investigate, train, supervise and/or discipline officers under 42 U.S.C. §§ 1981, 1983, 1985, and 1988 against Defendant Corrections Officers, Defendant Blanche Carney, Defendant Adrian Christmas, Defendant Terence Clark, and Defendant City of Philadelphia (Count IV); intentional infliction of emotional distress under state law against Defendant Corrections Officers (Count V); and conspiracy against Defendant Corrections Officers (Count VI).

Pending now is Defendants' motion to dismiss Counts II, IV, and VI in their entirety, as

---

[1] Defendants Alvin Matthews, Lorenda Hill, Cheryl Hill, James Smith, John Doe 1, John Doe 2, Jane Doe 1, and Jane Doe 2 are collectively referred to as "Defendant Corrections Officers" both in the Amended Complaint and in this opinion.

well as Counts I, III, and V as to all Defendants except for Defendant Matthews. For the following reasons, Defendants' motion will be granted in part and denied in part.

The facts are drawn from the Amended Complaint, and for purposes of this opinion, taken as true. *See Great W. Mining & Mineral Co v. Fox Rothschild LLP*, 615 F.3d 159, 176 (3d Cir. 2010).

On or about July 7, 2016, Plaintiff was incarcerated as a pre-trial detainee at a detention center run by the Philadelphia Corrections System. While incarcerated, Plaintiff attended a religious service which, at some point he left to use the restroom. On his way down a hallway toward the restroom, Plaintiff alleges that he encountered Defendant Matthews, who told Plaintiff to return to the service. Plaintiff attempted to comply. Nevertheless, according to Plaintiff, Defendant Matthews grabbed the back of Plaintiff's shirt and shoved him back into the room where the service was taking place.

Once the service concluded, as Plaintiff was returning to his cell, he was attacked by Defendant Matthews and the seven other Defendant Corrections Officers named in this case. Plaintiff states that he was punched and kicked in the face, head, neck, and body, and was subsequently diagnosed with several broken facial bones. Plaintiff asserts that the beating left him with permanent problems with the alignment of his jaw, his vision, and his ability to sleep. He also claims to experience anxiety, nightmares, headaches, and the inability to engage in "his usual activities."

After the incident, Defendant Corrections Officer Matthews filed an Inmate Misconduct Report that Plaintiff describes as a "coverup." According to Plaintiff, the Inmate Misconduct Report conveys an entirely different account from the one offered in the Amended Complaint, characterizing Plaintiff as the aggressor, not mentioning the presence of any Corrections Officers

other than Defendant Matthews during the encounter, noting that Defendant Matthews "fe[lt] threatened," and describing Defendant Matthews as striking Plaintiff with "a few closed hand strikes." The report was reviewed, edited, and/or approved by Defendant Smith. According to Plaintiff's Amended Complaint, even though some of Defendant Corrections Officers had already been the subject of "formal and informal" complaints alleging excessive use of force against inmates in the past, none of the Defendant Corrections Officers were either investigated or reprimanded in connection with Plaintiff's injuries.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare" recitations of the elements of a claim supported only by "conclusory statements" will not suffice. *Id.* at 683. Instead, a plaintiff must allege some facts to raise the allegation above the level of mere speculation. *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 542 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 545). In determining whether a complaint satisfies this standard, a court must first outline the required elements, then "peel away . . . allegations that are no more than conclusions and thus not entitled to the assumption of truth," and finally decide whether the well-pled factual allegations—taken as true—entitle the plaintiff to relief. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

**A.** *Monell* **Claim against the City**

Count IV of the Amended Complaint asserts that the City is liable under *Monell v. Department of Social Services of New York City*, 436 U.S. 658 (1978), for a custom or policy of

3

failing to "investigate, train, supervise and/or discipline".[2] Defendants argue that Plaintiff has failed to state a claim against the City.

The Supreme Court explained in *Monell* that "[l]ocal governing bodies . . . can be sued directly under § 1983 . . . where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690. In "liability through inaction" cases—that is, where a plaintiff claims that a municipality is liable for its "failure" to investigate, train, supervise or discipline municipal employees—a plaintiff must show that the "failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).[3] "Deliberate indifference . . . require[es] proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997). It is "ordinarily" shown through "[a] pattern of similar constitutional violations." *Connick v. Thompson*, 563 U.S. 51, 62 (2011).

However, in particularly "obvious" cases, deliberate indifference can be shown through a "single-incident theory of liability." *Thomas v. Cumberland County*, 749 F.3d 217, 223-25 (3d Cir. 2014) (citing *Harris*, 489 U.S. at 390). The Supreme Court has explained that in "single-incident" cases may occur where a violation of federal rights is a "highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations" such that "[t]he likelihood that the situation will recur" could "justify" a finding that a

---

[2] Count IV also asserts that all other Defendants named in this case are liable under *Monell*. The argument as it relates to Defendants other than the City is addressed *infra* Section III.B.

[3] Although the Supreme Court initially applied the "deliberate indifference" standard specifically to "failure-to-train" cases, the Third Circuit "applie[s] the Supreme Court's rulings in failure-to-train cases to other claims of liability through inaction" as well. *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000).

4

policymakers' failure to properly equip the officer "reflected 'deliberate indifference' to the obvious consequence of the policymakers' choice." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997) (citing *Harris*, 489 U.S. at 390 n.10). Liability only arises "in a narrow range of circumstances," *id.*, and the "burden on a plaintiff in such a case is high," *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000).

In view of the standard through which a complaint must be reviewed on a motion to dismiss stage, Plaintiff has alleged sufficient facts to plead a "single-incident" basis for liability.[4] Plaintiff alleges that he was attacked by eight Defendant Corrections Officers, punched and kicked repeatedly, and that Defendant Corrections Officers broke multiple bones in his face. He further alleges that at least one Defendant Corrections Officer falsified an Inmate Misconduct Report detailing the incident, that another Defendant Corrections Officer who had participated in the attack approved the Report, and that none of the other six Defendant Corrections Officers provided a truthful account. Finally, Plaintiff alleges that there was no investigation into the incident and none of the Defendant Corrections Officers were disciplined. Taking the pleaded facts as true—including the number of officers involved, the seriousness of the resulting injuries, the lack of provocation, and the efforts to cover up the act—this is no "ordinar[]y" case. *Connick*, 563 U.S. at 62. Viewing the allegations regarding the severe and unprovoked nature of the beating along with the number of officers involved, creates a reasonable inference that Defendant Corrections Officers were inadequately trained and supervised. And the allegation that, despite the extent of Plaintiff's injuries and the specificity of his allegations, no investigation or discipline followed, creates the reasonable inference that the City has a policy of

---

[4] Although Plaintiff does not argue "single-incident" liability in his briefing, "a complaint that states a plausible claim for relief survives a motion to dismiss," *Iqbal*, 556 U.S. at 679, regardless of whether the briefing raises the particular legal argument. *See also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (A motion to dismiss must fail if "under any reasonable reading of the complaint . . . the plaintiff may be entitled to relief.") (internal quotation marks omitted).

inadequate investigations, training, supervision and/or discipline" in its jails.

Therefore, Count IV will not be dismissed as to the City.

**B.** *Monell* **Count against Individual Defendants**

Count IV of the Amended Complaint also asserts *Monell* liability against each of the individual defendants.

*Monell* liability applies only to municipalities, not individuals. *See Smith v. Dep't of Gen. Servs., PA Capitol Police Bureau*, 2005 WL 1563505, at *14 (M.D. Pa. July 1, 2005) (quoting *Harris*, 489 U.S. at 380). Therefore, the Count will be dismissed as to each individual defendant. And because Count IV is the only count asserted against Defendants Carney, Christmas, and Clark, they will be dismissed from the case entirely. Dismissal will be with prejudice because amendment would be futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 112-13 (3d Cir. 2002).

**C. Claims against Defendant Corrections Officers**

Defendants argue that all counts against Defendants Lorenda Hill, Cheryl Hill, and James Smith, should be dismissed because Plaintiff "fails to set forth any facts actually connecting these defendants with the alleged incident." Defendants' entire argument appears to turn on the fact that the Amended Complaint alleges that "Defendant Corrections Officers" attacked Plaintiff, rather specifically naming each individual officer. The Amended Complaint, however, defines the term "Defendant Correction Officers" to mean Defendant Matthews, Defendant Lorenda Hill, Defendant Cheryl Hill, Defendant Smith, Defendant John Doe 1, Defendant John Doe 2, Defendant Jane Doe 1, and Defendant Jane Doe 2. Therefore, each time the Amended Complaint refers to "Defendant Correction Officers," it can be read as referring to each of these individual defendants. The result, then, is that the Amended Complaint alleges that each of the

6

Defendant Correction Officers "punch[ed], kick[ed], and str[uck] Plaintiff in his facial area, head, neck, and body." Because Plaintiff has adequately pled the involvement of each of these Defendants, Counts I, II, III, V, and VI will not be dismissed as to any of the Defendant Corrections Officers.

**D. Conspiracy**

Defendants argue that Count VI—conspiracy as to Defendant Corrections Officers—must be dismissed because Plaintiff "fails to allege a single fact to support th[e] claim" and instead offers only "a mere . . . boilerplate recitation of the legal standard."

To establish a conspiracy under 42 U.S.C. § 1983, Plaintiff must show that "persons acting under color of state law 'reached an understanding' to deprive him of his constitutional rights." *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 294 (3d Cir. 2018) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150-52 (1970)). "In the absence of direct proof," an "understanding or agreement to conspire can be inferred from circumstantial evidence." *Id.* (internal quotation marks omitted). The constitutional rights that can implicate a conspiracy under Section 1983 include those protected by the Eighth and Fourteenth Amendments, such as the right to be free from the use of excessive force, *Climo v. Rustin*, 2012 WL 3779178, at *13 (W.D. Pa. Aug. 31, 2012), and the right of access to the courts, *Jutrowski*, 904 F.3d at 294.

A conspiracy to deprive a plaintiff of his right to be free from excessive force can be shown on the basis that beatings were committed by officers "acting together." *Adams v. City of Atlantic City*, 294 F. Supp.3d 283, 300 (D.N.J. 2018); *see also Hafner v. Brown*, 983 F.2d 570, 578 (4th Cir. 1992) ("Acquiescence can amount to a conspiracy agreement when . . . one police officer watches an open breach of the law and does nothing to seek its prevention."). An "after-the-fact" conspiracy to cover up the use of force and prevent access to the courts can be shown

7

through "material omissions in contemporaneous . . . reports" and "conflicting accounts" of the events in question. *Jutrowski*, 904 F.3d at 296-97 (internal quotation marks omitted).

Plaintiff has pled facts that, taken as true, establish a conspiracy to deprive him of his constitutional rights. He alleges that Defendant Corrections Officers attacked together, punching, kicking, and striking his body—that is, that each individual Officer both struck Plaintiff and failed to stop the other Defendant Corrections Officers from striking Plaintiff. He alleges that no Officer came forward with a truthful account of the attack. He alleges that Officer Matthews filed a materially false Inmate Misconduct Report to prevent Plaintiff from seeking redress. And he alleges that others reviewed, edited, or approved the report. These allegations are sufficient to state a claim that Defendant Corrections Officers "reached an understanding" to violate Plaintiff's Eighth Amendment right to be free from the use of excessive force, and Plaintiff's Fourteenth Amendment right of access to the courts. Therefore, Defendants motion to dismiss the conspiracy count will be denied.

For the foregoing reasons, Defendants' motion to dismiss will be granted in part and denied in part.

An appropriate order follows.

                                                  **BY THE COURT:**

                                                  /s/ Wendy Beetlestone

                                                  **WENDY BEETLESTONE, J.**

**November 28, 2018**