IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JERMAU GASS,<br>        Plaintiff,<br><br>v.<br><br>ALVIN MATTHEWS, SGT. LORENDA HILL, SGT. CHERYL HILL, LT. JAMES SMITH, JOHN DOE 1, JOHN DOE 2, JANE DOE 1, JANE DOE 2, TERENCE CLARK, ADRIAN CHRISTMAS, COMMISSIONER BLANCHE CARNEY, AND THE CITY OF PHILADELPHIA,<br>        Defendants. | CIVIL ACTION<br><br><br>NO. 18-2360<br><br><br>**FILED**<br>APR 16 2019<br>KATE BARKMAN, Clerk<br>By_____Dep. Clerk |

## MEMORANDUM OPINION

Plaintiff Jermau Gass bring this suit against the City of Philadelphia (the "City") and various individuals employed by the Philadelphia Department of Prisons ("PDP"), namely Alvin Matthews, James Smith, Lorenda Hill, and Cheryl Hill (collectively "Corrections Defendants").[1] Plaintiff claims that, while incarcerated as a pre-trial detainee in a PDP facility, corrections officers assaulted him, and then conspired to cover up the assault. Plaintiff's Amended Complaint asserts six Counts against Defendants: unreasonable use of force under 42 U.S.C. § 1983 against Corrections Defendants (Count I); failure to intervene under 42 U.S.C. § 1983 against Corrections Defendants (Count II); assault and battery under state law against Corrections Defendants (Count III); custom or policy of failing to investigate, train, supervise and/or discipline officers under 42 U.S.C. §§ 1981, 1983, 1985, and 1988 against the City (Count

---

[1] The Amended Complaint also asserts claims against unidentified defendants John Doe #1, John Doe #2, Jane Doe #1, and Jane Doe #2. Following discovery, Plaintiff has not identified the Doe defendants, and, accordingly, those unidentified defendants will be dismissed. *See Blakeslee v Clinton Cty.*, 336 F. App'x 248, 250 (3d Cir. 2009) ("Use of John Doe defendants is permissible in certain situations until reasonable discovery permits the true defendants to be identified. If reasonable discovery does not unveil the proper identities, however, the John Doe defendants must be dismissed."); *Hindes v F.D I C.*, 137 F.3d 148, 155 (3d Cir. 1998) ("The case law is clear that fictitious parties must eventually be dismissed, if discovery yields no identities.") (internal alterations and quotations omitted).

ENT'D APR 16 2019

IV); intentional infliction of emotional distress under state law against Corrections Defendants (Count V); and, conspiracy under 42 U.S.C. § 1983 against Corrections Defendants (Count VI).

Pending now is Defendants' partial motion for summary judgment as to Counts II, IV, V, and VI in their entirety, as well as to Counts I and III as to all of the Corrections Defendants other than Matthews. For the following reasons, Defendants' motion will be granted.

## I. Factual Background

### A. The Assault

In May of 2016, Plaintiff was arrested and charged with various driving-related offenses. After his arrest, Plaintiff was incarcerated at the Philadelphia Detention Center, a correctional facility run by the PDP, to await trial.

On July 6, 2016, Plaintiff attended a bible study at the Detention Center. At some point, Plaintiff left the room where the bible study was being held to use the restroom and encountered Matthews, a corrections officer. What happened next is a matter of dispute between the parties.[2] While all agree that Matthews instructed Plaintiff to return to bible study, Plaintiff further testified that Matthews physically pushed him back into the room, a claim Matthews denies.

A few minutes after the initial encounter, the bible study ended. The inmates, including Plaintiff, left to return to their cells. As Plaintiff exited the bible study room, he again encountered Matthews; the two were in close proximity to each other. All agree that Plaintiff said something to Matthews, although the parties offer different accounts of what was said. Matthews then struck Plaintiff in the face several times with a closed fist, knocking Plaintiff to the ground. Plaintiff also asserts that "a tall black male with glasses joined in the assault," but has not identified the second assailant. Defendants deny that any other person joined in the

---

[2] As explained below, the disputes of material fact recounted here do not bear on Defendants' motion for partial summary judgment.

2

assault.

Matthews eventually helped Plaintiff to his feet and returned him to his cell. Plaintiff claims Matthews instructed him not to say anything about the incident. After some period of time—the parties dispute the period of delay—Plaintiff was taken to the facility's medical department for treatment, and, later, the Aria-Torresdale hospital for further evaluation.

### B. Subsequent Investigation & Disciplinary Action

Roughly fifteen minutes after the incident, Matthews filed a "Report of the Use of Force By Employee," which described the incident as follows:

> After Assisting inmates to A block from gym Inmate Gass, Jermau pp## 1127996 approached from behind cursing and threatening me saying "fuck you bitch ass C/O i'm a fuck you up." I C/O Matthews turned around and inmate was coming towards me saying "you can see me now cause i'm a see you on the street and fuck you up.["] I C/O Matthews feeling threatened struck Inmate Gass in facial area with a few closed hand strikes. Sgt. Hill was notified and inmate was taken to medical without further incident.

Matthews' Report further stated that force was used "[t]o gain compliance and to protect officer from harm."

On July 12, 2016, Sergeant Lorenda Hill—Matthews' supervisor—served Plaintiff with an "Inmate Misconduct" Report, which stated:

> On July 7, 2016 @ approximately 12:15 p.m. I C/O Matthews assigned to escort officer while assisting A-block back from Gym was approached by inmate Grass, Jermau pp#127996 who had left out of Bible Study. Inmate Grass began cursing loudly "Fuck You bitch ass C/O I'm a fuck you up." I C/O Matthews turned around and inmate Grass continued to approach me Saying "you a pussy and you can see me now cause I'm a see you on the street and fuck you up. I C/O Matthews feeling threatened struck inmate Grass with a few closed hand strikes. Sgt. Hill was notified and inmate was taken to medical without further incident.

Following Hill's Misconduct Report, Plaintiff was subjected to disciplinary action for his involvement in the incident.

The PDP also conducted a further investigation into Matthews' use of force. On July 13,

3

2016, Lieutenant James Smith—the supervisor who investigated the incident—delivered his findings, including a "Summary Report Regarding the Use of Force."[3] Smith's Summary identified the "[t]ype of [f]orce [u]sed" as "[c]losed hand strikes," and concluded that PDP's "use of force policy was not followed." Smith also indicated that "[f]urther investigation [was] warranted." The facility's Deputy Warden and Warden concurred in Smith's findings. At the time, no disciplinary action was taken against Matthews.

### C. Use of Force Policy & Training

As indicated by Smith's Summary, the PDP maintains a policy regarding corrections officers' use of force within the Detention Center. It is undisputed that, as new recruits, corrections officers attend a thirteen-week training program, portions of which are devoted to policies concerning the use of force and the de-escalation of situations with prisoners. It is further undisputed that, after the academy, corrections officers receive ongoing training— officers are required to read prison policies and directives and sign acknowledgement forms stating that they did, in fact, read the materials.

### II. Legal Standard

Summary judgment must be granted to a moving party if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Alabama v. North Carolina*, 560 U.S. 330, 344 (2010). Material facts are determined by reference to the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute "exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *U.S. ex rel. Greenfield v. Medco Health Solutions, Inc.*, 880 F.3d 89, 93 (3d Cir. 2018). While "all reasonable inferences" must be drawn in the non-moving

---

[3] The record indicates that Smith prepared a full report, which the parties cite to in depositions, but only the summary of the report was included in the record.

4

party's favor, *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013), "the non-movant may not rest on speculation and conjecture in opposing a motion for summary judgment," *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 666 (3d Cir. 2016).

## III. Discussion

### A. Claims Against the City

Section 1983 plaintiffs may recover against a city government where the deprivation of constitutional rights can be attributed to the city itself. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 692 (1978); *Langford v. City of Atlantic City*, 235 F.3d 845, 848 (3d Cir. 2000) ("[A] municipality is liable for acts which the municipality has officially sanctioned or ordered.") (internal quotations omitted); *see also Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) ("A government entity may not be held liable under section 1983 under the respondeat superior doctrine."). "A plaintiff can attribute a constitutional tort to the city itself by showing the injury was caused by city policy, by city custom, or by policymaking officials' deliberate indifference to constituents' constitutional rights." *Wright v. City of Philadelphia*, 685 F. App'x 142, 146 (3d Cir. 2017), *cert. denied Wright v. City of Philadelphia, Pa.*, 138 S. Ct. 360 (2017) (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)).

Here, Plaintiff does not argue, and cites no record evidence that would establish, that the City had a policy or custom that caused a deprivation of his constitutional rights. *Cf. Andrews*, 895 F.2d at 1480 ("Policy is made when a decisionmaker with final authority to establish municipal policy with respect to the action issues an official proclamation, policy or edict.") (internal quotations and alterations omitted); *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) ("Custom . . . can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to

5

constitute law."). Instead, Plaintiff argues the City acted with deliberate indifference to his constitutional rights by failing to train, supervise, investigate, or discipline PDP corrections officers.

"Deliberate indifference stems from government inaction"—that is, a failure to act. *Wright*, 685 F. App'x. at 147. Where the failure to act "amounts to deliberate indifference to the rights of person with whom [city employees] come into contact," the municipality may be held liable for that inaction. *Canton*, 489 U.S. at 388. To establish deliberate indifference for a "failure to" claim, a Section 1983 plaintiff must show that "a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 410 (1997). "[W]hen city policymakers are on actual or constructive notice that a particular omission in their training"—or investigatory or supervisory or disciplinary—"program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *see Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) ("[The Third Circuit] applie[s] the Supreme Court's rulings in failure-to-train cases to other claims of liability through inaction"). Ordinarily, showing deliberate indifference requires "[a] pattern of similar constitutional violations by untrained" or unsupervised or undisciplined or uninvestigated employees. *Connick*, 563 U.S. at 62.

However, in the absence of a pattern of similar violations, a single constitutional violation may amount to deliberate indifference where the need for municipal action "'can be said to be so obvious that failure to do so could properly be characterized as deliberate indifference to constitutional rights' even without a pattern of constitutional violations." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 223 (3d Cir. 2014) (quoting *Canton*, 489 U.S. at 390 n.10).

6

For example, "[b]ecause 'city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons,' if the city arms the officers with firearms, 'the need to train officers in the constitutional limitations on the use of deadly force' is 'so obvious' that a failure to provide such training could provide a basis for single-incident municipal liability." *Id.* (quoting *Canton*, 489 U.S. at 390, n.10). Single-incident liability, however, will be viable only in a "narrow range of circumstances," *Bryan Cty.*, 520 U.S. at 409, because "[i]n virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident," *Canton*, 489 U.S. at 392. The Supreme Court has cautioned that courts should be wary of "engag[ing] in an endless exercise of second-guessing municipal . . . programs." *Id.*

Here, Plaintiff has not presented evidence from which a reasonable factfinder could conclude that the City acted with deliberate indifference by failing to train, supervise, investigate, or discipline PDP corrections officers.

### 1. Failure to Supervise

Plaintiff offers no evidence—nor, for that matter, any argument—regarding the City's purported failure to supervise corrections officers. Accordingly, Plaintiff's failure to supervise claim will be dismissed. *See D.E. v. Cent. Dauphin Sch, Dist.*, 765 F.3d 260, 268-69 (3d Cir. 2014) ("The non-moving party must . . . set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice.") (internal quotation marks and alternations omitted).

### 2. Failure to Investigate

Plaintiff's failure to investigate claim fails as a matter of law. In failure to investigate

7

claims, "[d]eliberate indifference has been demonstrated . . . where prison officials were put on notice and then simply refused to investigate a prisoner's claim"—that is, where officials "stand idly by" after "a prisoner presented credible evidence" that his or her rights were violated. *Moore v. Tartler*, 986 F.2d 682, 686 (3d Cir. 1993). Here, the record evidence indicates that, rather than "stand idly by," the PDP promptly investigated the July 7 assault, resulting in Lieutenant Smith's Report. Accordingly, Plaintiff has not presented evidence from which a reasonable factfinder could conclude that the City failed to investigate the incident.

### 3. Failure to Discipline

Plaintiff's failure to discipline claim fares no better. "A failure to . . . discipline . . . can only form the basis for section 1983 municipal liability if the plaintiff can show both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate." *Montgomery v. De Simone*, 159 F.3d 120, 127 (3d Cir. 1998). The Third Circuit has held that a municipality-defendant's decision not to discipline an employee for a single incident does not, without more, "communicate[] a message of approval." *Id.* (finding "[plaintiff] failed to allege any action or inaction by the municipal defendants that could be interpreted as encouraging [the individual defendant's] offensive actions" where "[plaintiff's] failure to . . . discipline . . . claim [was] based on the contention that [the individual defendant] . . . was not disciplined as a result of the incident involving [plaintiff]"); *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 (3d Cir. 1997) (upholding summary judgment where Section 1983 plaintiff "alleged no specific inaction by [the individual defendant's] supervisors that could be interpreted as encouraging his actions," even though "management-level personnel" were "aware of [the individual defendant's] conduct" and

8

"did nothing to curtail it"); *see also Turpin v. Mailet*, 619 F.2d 196, 202 (2d Cir. 1980) (holding municipality could not be held liable for "failure to discipline [individual defendant] for a single incident of illegality" where "[t]here was no evidence of a prior pattern or practice" of wrongdoing).

Here, Plaintiff offers no evidence that Matthews engaged in a prior pattern of similar misconduct. Nor has Plaintiff offered evidence from which a reasonable factfinder could conclude that the City "communicated a message of approval to [Matthews]" for the assault. *Montgomery*, 159 F.3d at 127. Instead, the record evidence shows Smith conducted an extensive investigation into Matthews' action and concluded that Matthews did not follow the use of force policy. Although no disciplinary action was taken, the City's decision to refrain from disciplining Matthews for the single incident does not amount to a "message of approval" as required to sustain a failure to discipline claim. *Id.*

### 4. Failure to Train

Finally, Plaintiff has not established a viable failure to train claim under either a pattern-of-similar-violations theory or a single-incident theory.

First, as noted, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62 (internal quotation marks omitted). Here, Plaintiff offers no evidence establishing a pattern of similar violations. Instead, Plaintiff avers generally that "the number of use of force incidents that occur within the Philadelphia Prison System should be well-known to the City and the Policymakers, mainly because use of force reports are signed by the Warden." But, Plaintiff offers no evidence of use of force reports concerning similar excessive force claims that would have put the City on notice. *See D.E.*, 765 F.3d at 268-69. Plaintiff also cites the

9

docket sheet from *Commonwealth v. Larry Levy*, a 2015 case in the Philadelphia Court of Common Pleas in which a defendant plead guilty to simple assault. Plaintiff claims the case concerned a PDP corrections officer assaulting a prisoner. The docket sheet, however, says nothing about the underlying factual circumstances that led to the plea, and the Court will not simply accept Plaintiff's characterization of the events as true. *See Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109–10 (3d Cir. 1985) ("Legal memoranda and oral argument are not evidence[.]"). Thus, Plaintiff has not offered any evidence of a pattern of similar constitutional violations that would establish the City's deliberate indifference to the need to train corrections officers on the use of force.[4]

Second, a reasonable jury could not conclude that the City acted with deliberate indifference based only on Matthews' assault. To see why, a contrast with *Thomas*—where the Third Circuit held that a Section 1983 plaintiff could proceed to trial on a failure to protect claim based on a single-incident theory of liability—is instructive. 749 F.3d at 225-226. There, the plaintiff established that the municipality-defendant failed to provide any "de-escalation and intervention training as a part of pre-service training for corrections officers" and offered "expert opinion evidence that the failure to provide conflict de-escalation and intervention training was a careless and dangerous practice not aligned with prevailing standards." *Id.* at 225. The court of appeals reasoned that, given the expert's testimony and other record evidence establishing "the

---

[4] Plaintiff's reply brief also includes a footnote that references other purported assaults by PDP corrections officers. Specifically, Plaintiff cites to a still-pending case in this District that alleges PDP corrections officers used excessive force on an inmate, *see Andrews v City of Philadelphia*, 2:17-cv-00962 (E.D. Pa. Mar. 2, 2017), and a YouTube link to a video that Plaintiff claims shows PDP corrections officers assaulting an inmate in 2014. Plaintiff's reliance on these materials to establish a pattern of similar constitutional violations is unavailing for several reasons. First, the material is not in the record, and so cannot be relied on to defeat a motion for summary judgment. *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of material in the record"); *Jersey Cent*, 772 F.2d at 1109-10. Second, even if the Court were to consider the materials, they do not establish a pattern of similar constitutional violations. As for the *Andrews* case, mere allegations of misconduct--whether in the *Andrews* complaint or in Plaintiff's brief—are not *evidence* of a pattern of similar violations. As for the YouTube link, even crediting Plaintiff's account, one incident from 2014 does not amount to a "pattern" sufficient to put the City on notice. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 138 (3d Cir 2001) ("[O]ne incident does not a pattern make.").

10

frequency of fights occurring between inmates in the [corrections facility] that could lead to constitutional violations for failure to protect," "the lack of [conflict de-escalation and intervention] training [was] akin to 'a failure to equip law enforcement officers with specific tools to handle recurring situations.'" *Id.* (quoting *Bryan Cty.*, 520 U.S. at 409).

As compared to *Thomas*, the record fails to create a genuine issue of material fact as to whether the City acted with deliberate indifference. Unlike in *Thomas* and the *Canton* lack-of-training-on-the-use-of-deadly-force hypothetical, the record shows that the City trained corrections officers—including Matthews—on the appropriate use of force as well as on de-escalation techniques. Specifically, it is undisputed that, as new recruits, corrections officers attend a thirteen-week training program, portions of which are devoted to use of force and de-escalation. It is further undisputed that, after the academy, corrections officers received ongoing training on these issues. Accordingly, unlike the municipality-defendant in *Thomas*, the record shows that the City equipped its corrections officers with "tools to handle" the "recurring situation[]" of the need to use force or de-escalate confrontations within the prison setting.

Plaintiff argues, however, that the training provided by the City was so inadequate as to amount to a failure to train. The scope of a failure to train claim is "particularly" narrow where, as here, a plaintiff "merely" argues "that a different training program than the one in place would have been more effective." *Grazier ex rel. White v. City of Philadelphia*, 328 F.3d 120, 125 (3d Cir. 2003). Evidence indicating state officials could have had "better or more training" will not "suffice to prove" deliberate indifference. *Bryan Cty.*, 520 U.S. at 404. "Rather, [a Section 1983 plaintiff] must identify specific training measures that could have prevented the particular harm at issue." *Schuenemann v. United States*, 2006 WL 408404, at *4 (3d Cir. Feb. 23, 2006) (citing *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1030 (3d Cir. 1991)). Here, Plaintiff fails to

11

identify any training measures that could have prevented the assault. *Cf. Thomas*, 749 F.3d at 225 (holding a reasonable factfinder could find a failure to train where plaintiff offered "expert opinion evidence that the failure to provide conflict de-escalation and intervention training was a careless and dangerous practice not aligned with prevailing standards"). The only evidence Plaintiff offers as to the inadequacy of the training program is selective excerpts from the Corrections Defendants' deposition testimony. That evidence, however, does not create a genuine issue of material fact because, even when construed in the light most favorable to the Plaintiff, the testimony indicates at most that the officials could benefit from "better or more training," which is "a claim [that] could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program." *Bryan Cty.*, 520 U.S. at 404.

Because Plaintiff has not offered evidence from which a reasonable factfinder could conclude that the City's training program was so inadequate as to evidence deliberate indifference, the City is entitled to summary judgment on the failure to train claim.

### B. Individual Claims

#### 1. Fourteenth Amendment Claims Against Corrections Defendants

"Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quotation marks omitted). "[I]t is well established that, under the Constitution's guarantees of due process, an unsentenced inmate 'is entitled[,] at a minimum, to no less protection than a sentenced inmate is entitled to under the Eighth Amendment.'" *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012) (quoting *Fuentes v. Wagner*, 206 F.3d 335, 344 (3d Cir. 2000)). Plaintiff asserts two sets of Due Process claims against the Corrections Defendants: (1) use of excessive force; and, (2) failure to intervene.

12

### i. Excessive Force

The Corrections Defendants—with the exception of Matthews, who does not move for summary judge on this claim—are entitled to summary judgment on Plaintiff's excessive force claims. To make out an excessive force claim, Plaintiff must establish that the Corrections Defendants used forced against him that was "objectively unreasonable." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). But, "in the face of [a] motion for summary judgment, a § 1983 plaintiff must produce evidence supporting each individual defendants' personal involvement in the alleged violation to bring that defendant to trial." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 291 (3d Cir. 2018). Here, Plaintiff offers no record evidence that Smith, Lorenda Hill, or Cheryl Hill used force against him, much less objectively unreasonable force.[5] Thus, summary judgment will be granted on Plaintiff's excessive force claims against those defendants—that is, all of the Corrections Defendants except Matthews.

### ii. Failure to Intervene

The Corrections Defendants—this time including Matthews—are also entitled to summary judgment on Plaintiff's failure to intervene claims. Prison officials have a duty to take reasonable steps to protect a victim from another officer's use of excessive force. *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002); *Bistrian*, 696 F.3d at 371 (applying *Smith*'s holding to pretrial detainees). "However, an officer is only liable if there is a realistic and reasonable opportunity to intervene." *Smith*, 293 F.3d at 651. Thus, "[a]n officer's failure to stop an ongoing constitutional violation violates the Eighth Amendment when [the officer] 'had a reasonable opportunity to intervene and simply refused to do so.'" *Ricks v. Shover*, 891 F.3d 468, 479 (3d Cir. 2018) (quoting *Smith*, 293 F.3d at 650). Here, Plaintiff cites no record

---

[5] Although Plaintiff asserts that "a tall black male with glasses joined in the assault," Plaintiff has not identified the alleged assailant despite being afforded discovery, and, thus, may not maintain a claim against the unidentified assailant. *See supra* note 1.

13

evidence to establish that Smith, Lorenda Hill, or Cheryl Hill had a reasonable opportunity to intervene in Matthews' assault on Plaintiff. Further, while Plaintiff offers evidence that Matthews used unreasonable force against him, Plaintiff cites no evidence establishing that Matthews failed to intervene in some other, ongoing constitutional violation. Thus, while Plaintiff may maintain an excessive force claim against Matthews, that same evidence does not support a failure to intervene claim against him. Accordingly, the Corrections Defendants—including Matthews—are entitled to summary judgment on Plaintiff's failure to intervene claims.

### 2. Assault & Battery

Plaintiff's claims for assault and battery against the Corrections Defendants—with the exception of Matthews, who does not move for summary judgment on this claim—fail as a matter of law. Under Pennsylvania law: "Assault is an intentional attempt by force to do an injury on the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree on the person." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994). Plaintiff offers no record evidence that anyone other than Matthews attempted to use or, in fact, used force against Plaintiff.[6] Accordingly, summary judgment will be granted on Plaintiff's assault and battery claims as to Smith, Lorenda Hill, and Cheryl Hill.

### 3. Intentional Infliction of Emotional Distress

Plaintiff's claims of intentional infliction of emotional distress ("IIED") against the Corrections Defendants also fail as a matter of law. To make out an IIED claim, Plaintiff must show that the Corrections Defendants' conduct: (1) was intentional or reckless; (2) was extreme and outrageous; (3) caused distress to Plaintiff; and, (4) that the distress was severe. *Cox v.*

---

[6] For the reasons discussed above, Plaintiff may not maintain a claim of assault or battery against the unidentified assailant. *See supra* note 1.

14

*Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988) (applying Pennsylvania law). Pennsylvania law also requires that "the alleged emotional distress must be supported by competent medical evidence and . . . the lack of such evidence preclude[s] recovery." *Williams v. Guzzardi*, 875 F.2d 46, 51 (3d Cir. 1989) (internal quotation marks omitted) (citing *Kazatsky v. King David Memorial Park, Inc.*, 527 A.2d 988, 995 (Pa. 1987)). Here, the IIED claims fail because Plaintiff cites no medical evidence in the record establishing that he suffered severe emotional distress.

### 4. Conspiracy

Finally, Plaintiff's conspiracy claims fail. To prevail on a conspiracy claim under Section 1983, Plaintiff must prove that the Corrections Defendants, or some subset thereof, "reached an understanding to deprive him of his constitutional rights." *Jutrowski*, 904 F.3d at 293-94 (internal quotation marks omitted). To survive a summary judgment motion, Plaintiff "must provide some factual basis to support the existence of the elements of a conspiracy." *Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 184-85 (3d Cir. 2009). "In the absence of direct proof," an "understanding or agreement to conspire can be inferred from circumstantial evidence." *Jutrowski*, 904 F.3d at 295 (internal quotation marks omitted).

The constitutional rights that can implicate a conspiracy under Section 1983 include those protected by the Eighth and Fourteenth Amendments, such as the right to be free from the use of excessive force and the right of access to the courts. *Id.* at 294. The latter is violated when "law enforcement officers conspire to cover up constitutional violations . . . because the coordinated officer conduct impedes an individual's access to courts and renders hollow a victim's right to redress in a court of law." *Id.* (internal quotations and alterations omitted).

A "before the fact" conspiracy "to use excessive force," *Jutrowski*, 904 F.3d at 296-97,

15

can be established through a showing that a beating was committed by officers "acting together," *Adams v. City of Atlantic City*, 294 F. Supp.3d 283, 300 (D.N.J. 2018); *see also Hafner v. Brown*, 983 F.2d 570, 578 (4th Cir. 1992) ("Acquiescence can amount to a conspiracy agreement when . . . one police officer watches an open breach of the law and does nothing to seek its prevention."). An "after-the-fact" conspiracy to cover up the use of force and prevent access to the courts can be established through evidence indicating "material omissions in contemporaneous . . . reports . . . specifically as to the infliction of an injury or reference to the use of force" and "irregularities and distorted or conflicting accounts that suggest a concerted effort to suppress facts." *Jutrowski*, 904 F.3d at 296-97 (internal quotation marks omitted).

Here, Plaintiff has not offered evidence from which a reasonable factfinder could conclude that there existed an agreement "before the fact. . . to use excessive force" or "after the fact" to deny "access to the courts." *Id.* at 296. As to a before-the-fact agreement, Plaintiff offers no evidence establishing that any of the named Defendants were present at, or participated in, the July 7 incident. Nor can Plaintiff establish a before-the-fact conspiracy based on his testimony that "a tall black male with glasses joined in the assault." Plaintiff offers no evidence corroborating this testimony, and "[b]are assertions, conclusory allegations, or suspicions will not suffice" to overcome a summary judgment motion. *D.E.*, 765 F.3d at 269.

Plaintiff has also failed to offer evidence that would establish an after-the-fact cover up. For one, there is no evidence that Matthews omitted the use of force in the report that he created contemporaneous with the incident; indeed, Matthews' Report stated that he "struck inmate Gass in facial area with a few closed hand strikes"—which comports with Plaintiff's claims of what occurred. Further, Plaintiff offers no evidence of "irregularities and distorted or conflicting accounts that suggest a concerted effort to suppress facts" among the Corrections Defendants.

16

Rather, the various reports prepared by the Corrections Defendants use nearly identical language with regard to Matthews' use of force. As noted, Matthews' Report stated that he "struck inmate Gass in facial area with a few closed hand strikes." Hill's Misconduct Report similarly recounted: "Matthews feeling threatened struck inmate Grass [sic] with a few closed hand strikes." Plaintiff argues Smith's Report—which Plaintiff does not include in the record—evidences "irregularities" because it stated that "Officer Matthews struck Inmate Gass [sic] with a few hand strikes," without identifying that the strikes were "close handed." However, Smith's Summary Report—which is included in the record—identified the "[t]ype of [f]orce [u]sed" as "[c]losed hand strikes." Even drawing all reasonable inferences in favor of Plaintiff, the record evidence does not indicate "irregularities . . . or conflicting accounts" of the assault amongst the Corrections Defendants from which a reasonable factfinder could conclude that they "reached an understanding" after-the-fact to cover-up the July 7 assault.

Summary judgment will therefore be granted to the Corrections Defendants on Plaintiff's conspiracy claims.

An appropriate order follows.

**April 15, 2019**                              **BY THE COURT:**

                                                                              **WENDY BEETLESTONE, J.**